# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>MARCUS DEON COTY,<br><br>　　　　　　　　Defendant. | 8:15CR194<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 34), issued by Magistrate Thomas D. Thalken, recommending that the Motion to Suppress filed by the Defendant Marcus Deon Coty ("Coty") (Filing No. 27), be denied. Coty filed Objections to the Findings and Recommendation (Filing No. 40) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government has not responded to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Coty is charged with two counts of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. Coty seeks to suppress evidence obtained from a search of his home on or before May 4, 2015, conducted by Coty's ex-girlfriend. Specifically, Coty seeks to suppress (1) a receipt from Moneymaker Guncraft Corp. dated March 21, 2015; (2) a receipt from Walmart, dated April 1, 2015; and (3) any evidence obtained from the subsequent investigation as a result of the illegal search of his home by his ex-girlfriend.

Coty was placed on supervised release in February of 2014, after having been convicted of being a felon in possession of a firearm. (Tr. 5.) United States Probation Officer Jeff Anthens ("Anthens") was assigned to supervise Coty. (Tr. 4.) In May of 2015, Anthens received documents and a statement from Coty's ex-girlfriend ("Ms. X"[1]) (Tr. 6, 7-8.) The documents consisted of two receipts, one from a gun shop in Omaha and the second from Walmart for the purchase of ammunition. (Tr. 8; H.E. 1.) Ms. X found the receipts in a drawer in Coty's residence, examined them, and turned them over to Anthens. (Tr. 11.) At the time Ms. X found the receipts she was not acting on behalf of any government official, nor did any government official have any knowledge of her actions. (Tr. 7.)

Upon receiving the receipts, Anthens examined them and determined that they were consistent with Ms. X's statement. (Tr. 9.) Anthens sent a scan of the receipts to an ATF agent. (Tr. 12.) The ATF agent indicated to Anthens that he would conduct an investigation. (Tr. 12.) Anthens later learned that, as a result of the investigation, the ATF agent had strong reason to believe that Coty had in fact recently possessed a firearm and purchased ammunition (Tr. 12.) Anthens also learned that the investigation led to other evidence, including videos of the defendant purchasing ammunition. (Tr. 12.)

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have

---

[1] Coty's former girlfriend was referred to throughout the hearing as "Ms. X." The Court will likewise refer to Coty's former girlfriend as Ms. X in this Memorandum and Order.

objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

Coty claims in his brief that Ms. X illegally obtained the receipts. "The Fourth Amendment protects only against government action." *United States v. Gonzalez*, 781 F.3d 422, 427 (8th Cir.) *cert. denied,* 136 S. Ct. 139 (2015). "'A search by a private party with no government knowledge or participation' does not implicate this constitutional right to be free from unreasonable search and seizure." *Id.* (quoting *United States v. Livesay,* 983 F.2d 135, 136 (8th Cir.1993)). There is no evidence that Ms. X was in any way acting with the knowledge or participation of the Government when she found the receipts. Although Anthens had contact with Ms. X throughout his supervision of Coty, his contact with her related solely to his supervision of Coty. There is no evidence that Anthens instructed Ms. X to conduct an investigation or act on his behalf. Accordingly, there is no Fourth Amendment violation based on Ms. X finding the receipts.

Coty also argues that his Fourth Amendment rights were violated when Anthens examined the receipts Ms. X provided to Anthens. Coty's argument is based on the United States Supreme Court's decision in *Walter v. United States,* 447 U.S. 649 (1980). In *Walter,* the defendants were charged with interstate shipment of five illegal obscene films, based on the following:

> 12 large, securely sealed packages containing 871 boxes of 8–millimeter film depicting homosexual activities were shipped by private carrier from St. Petersburg, Fla., to Atlanta, Ga. The shipment was addressed to

> "Leggs, Inc.," but was mistakenly delivered to a substation in the suburbs of Atlanta, where "L'eggs Products, Inc.," regularly received deliveries. Employees of the latter company opened each of the packages, finding the individual boxes of film. They examined the boxes, on one side of which were suggestive drawings, and on the other were explicit descriptions of the contents. One employee opened one or two of the boxes, and attempted without success to view portions of the film by holding it up to the light. Shortly thereafter, they called a Federal Bureau of Investigation agent who picked up the packages. . . .
>
> Thereafter, without making any effort to obtain a warrant or to communicate with the consignor or the consignee of the shipment, FBI agents viewed the films with a projector.

447 U.S. at 651-52. The Supreme Court held that the FBI agents' exhibition of the films "constituted an unreasonable invasion of the owner's constitutionally protected interest in privacy," notwithstanding that "the nature of the contents of these films was indicated by descriptive material on their individual containers." *Id.* at 654. The Court noted: "The fact that FBI agents were lawfully in possession of the boxes of film did not give them authority to search their contents . . . [as] it has been settled that an officer's authority to possess a package is distinct from his authority to examine its contents." *Id.* at 654-55 (citations omitted). The Supreme Court reasoned that the third party's prior opening of the boxes did not "excuse the [FBI's] failure to obtain a search warrant," because in viewing the videos, the FBI's investigation went beyond "examination of their contents to the extent that they had already been examined by third parties." 447 U.S. at 656.

Coty argues that this case is analogous to *Walter*, though his argument has taken different forms. Coty initially argued that Anthens illegally expanded the scope of Ms. X's private search when he opened the envelope Ms. X gave him and viewed its contents. This argument is inapposite to the holding in *Walter*. In *Walter*, the FBI expanded the scope of the private search by viewing the videos that the private parties

4

had not previously viewed. *Id.* at 656. In this case, Ms. X had previously viewed the receipts, and Anthens did not see any evidence that she had not already viewed. Further, Ms. X found the receipts loose in a drawer in Coty's residence and then placed the receipts in the unsealed envelope. (Tr. 11.) Thus, Coty cannot claim that he had any privacy interest in the envelope, nor were his rights violated when Anthens viewed the contents of the envelope.

Coty's argument at the hearing and in his objection took a slightly different form. Coty argued that the ATF, not Anthens, violated Coty's Fourth Amendment rights by conducting further investigation into the receipts. He contended that the receipts were similar to the canisters of film in *Walter* because, just as the FBI could not know if the films were obscene until it viewed the films, the ATF agents would have had no way to relate the receipts to Coty without further investigation. His argument is not persuasive.

First, as Coty notes in his objection, the receipt from the gun store showed Coty's name, identified the firearm in question, and listed a contact phone number. Thus, the ATF agents clearly could tie the gun store receipt to Coty.

Second, the fact that ATF agents conducted further investigation did not impermissibly expand the scope of the private search. In *United States v. Jacobsen,* 466 U.S. 109 (1984), employees of a private carrier examined a package that had been damaged in transit by a forklift. 466 *U.S.* at 111. Pursuant to company policy, they opened the package to inspect its contents in case of an insurance claim. *Id.* The package, an ordinary cardboard box with crumpled newspaper packed on top, contained a silver tube that the employees cut open. *Id.* Inside the tube, they found four plastic bags, one within the next. *Id.* In the innermost bag, the employees found white

5

powder. *Id.* The employees notified the DEA, placed the bags back in the tube, and put the tube and newspapers back into the box. *Id.* A DEA agent came to the location and removed the plastic bags from the tube. *Id.* He opened each one, field tested the contents, and confirmed that the powder was cocaine. *Id.* at 111–12. The defendants later challenged the search. The Supreme Court first noted that the initial search by company employees did not violate the Fourth Amendment because of its "private character." *Id.* at 115. The Court next examined the Government agent's actions to determine whether "they exceeded the scope of the private search." *Id.* The Court concluded that the agent's removal of the bags and visual inspection of their contents did not infringe any legitimate privacy rights because the acts "enabled the agent to learn nothing that had not previously been learned during the private search." *Id.* at 120. The Court also found that the field test did not exceed the scope of the private search because it "merely disclose[d]" whether the powder was cocaine and thus did not "compromise any legitimate interest in privacy." *Id.* at 123. "In sum," the Supreme Court in *Jacobsen* held, "the federal agents did not infringe any constitutionally protected privacy interest that had not already been frustrated as the result of private conduct." *Id.* at 126.

Similarly, in this case, neither Anthens nor the ATF agents violated any of Coty's protected rights that had not already been frustrated by Ms. X. Just as the DEA agents in *Jacobsen* were free to field test the white substance to determine whether it was cocaine, the ATF agents were free to investigate whether Coty made the purchases listed on the receipts. Anthens and the ATF received the receipts with the claim that that Coty made the purchases, and one of the receipts had Coty's name on it. Based on

6

information from the receipts, ATF agents investigated whether Coty had indeed made the purchases. Coty had no legitimate privacy interest in the purchases themselves. Accordingly, the evidence obtained from the receipts did not violate Coty's Fourth Amendment rights.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 34) are adopted;

2. The Motion to Suppress filed by the Defendant Marcus Deon Coty (Filing No. 27) is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 40) is overruled.

Dated this 23rd day of December, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge